Christopher P. Kelly (CK 0195)
REPPERT KELLY & SATRIALE, LLC
403 King George Road, Suite 201
Basking Ridge, New Jersey 07920
(908) 647-9300
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PATRICIA McCARTHY TOMASSI,                :
                                          :   Case No. 04-CV-02383 (MBM)
                              Plaintiff,  :
                                          :
            -against-                     :   **COMPLAINT AND**
                                          :   **DEMAND FOR JURY TRIAL**
INSIGNIA FINANCIAL GROUP, INC.,           :
INSIGNIA RESIDENTIAL GROUP, INC.,         :        **[ECF Case]**
and METLIFE, INC.,                        :
                                          :
                              Defendants. :
---------------------------------------------------------X

Plaintiff, Patricia McCarthy Tomassi ("Plaintiff" or "Ms. Tomassi"), by her attorneys, Reppert Kelly & Satriale, LLC, for her Complaint against defendants Insignia Financial Group, Inc., Insignia Residential Group, Inc. and MetLife, Inc. (all are collectively referred to herein as "defendants"), states as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff seeks monetary relief for the denial of equal employment opportunity to her by defendants. Plaintiff also seeks monetary relief on the basis of unlawful employment practices by defendants and its agents, representatives, and employees.

2.  Ms. Tomassi also seeks damages as a result of defendants' maintaining a policy, practice, custom or usage, including, but not limited to, the following:

(a) discriminating against plaintiff with respect to the terms and conditions of her employment because of her gender and/or her age.

(b) limiting and otherwise creating an environment of psychological harassment and professional segregation in ways that damaged plaintiff's personal and professional status as an employee because of her gender and/or her age; and

(c) unlawfully terminating Ms. Tomassi's employment on account of her gender and/or her age.

## JURISDICTION AND VENUE

3.   This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. §2000e-5(f)(3).  Jurisdiction is also based on 28 U.S.C. §§1331, 1343(4) and 1367(a).  The pendent jurisdiction of this Court is invoked for plaintiff's state law claims herein, since all of her claims derive from a common nucleus of operative facts.

4.   Venue is proper in this district under 28 U.S.C.§1391(b) and 42 U.S.C. §2000(e)-5(f) because, among other things, the acts complained of occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.   On or about September 26, 2003, Ms. Tomassi filed a Charge of Discrimination against defendants with the United States Equal Employment Opportunity Commission ("EEOC") as Charge Nos. 160-2004-00017 and 160-2004-0019.  Such charge was filed within 300 days after the last alleged unlawful employment practice occurred.

6. On or about December 29, 2003, less than ninety days prior to the filing of this Complaint, plaintiff received a Notice of Right to Sue from the EEOC.

## THE PARTIES

7. Ms. Tomassi is a citizen of the United States and a resident of Westchester County in the State of New York.  Ms. Tomassi is 64 years of age.

8. Upon information and belief, defendant Insignia Financial Group, Inc. is a Delaware corporation with its principal place of business located at 200 Park Avenue, 19th Floor, New York, New York 10166.  Upon information and belief, at all times relevant hereto, defendant Insignia Residential Group, Inc. was a Delaware corporation wholly owned and controlled by Insignia Financial Group, Inc. (both companies are collectively referred to herein as "Insignia").

9. Insignia is an employer as defined in §701(b), (g) and (h) of the Civil Rights Act, 42 U.S.C. §2000e(b), (g) and (h), in that Insignia affects commerce and employs at least fifteen persons.

10. Upon information and belief, defendant MetLife, Inc. ("MetLife") is a Delaware corporation with its principal place of business located at 1 Madison Avenue, New York, New York 10010.  MetLife is an employer as defined in §701(b), (g) and (h) of the Civil Rights Act, 42 U.S.C. §2000e(b), (g) and (h), in that MetLife affects commerce and employs at least fifteen persons.

## THE FACTS

11. Plaintiff commenced employment with MetLife in or about February 2000.  From the time she began her employment until October 2001, plaintiff held the position of Supervisor Resident Services for the Peter Cooper Village/Stuyvesant Town

("PCV/ST") housing complex in lower Manhattan.  Her department was responsible for handling all service requests of the residents of PCV/ST.  Plaintiff managed a unit of approximately 20 call center representatives.  MetLife is the owner of PCV/ST.

12.     In 2001, MetLife outsourced the management of the PCV/ST complex and solicited bids for this purpose.  Insignia won the bidding and was awarded the contract to manage PCV/ST in May 2001.  Thereafter, plaintiff and the other MetLife Management Office employees who had been performing services for PCV/ST became employees of Insignia, but continued to perform the same services that they had previously for PCV/ST.

13.     Insignia also brought in its own team to manage the PCV/ST operations in May 2001.  Insignia appointed Steve Stadmeyer as General Manager.

14.     In October 2001, Insignia decided to lay off three former MetLife employees, including plaintiff's supervisor, Christine Santos.  For approximately one month thereafter, plaintiff reported to Santos' former supervisor, Donna Tacchi.  In November 2001, Tacchi took a position with MetLife and plaintiff was promoted to Tacchi's position – Director of Resident Services.  As a result of the promotion, plaintiff assumed responsibility for both the resident services and community affairs functions of PCV/ST.

15.      In or about November 2001, Insignia began a major renovation project at PCV/ST for the purpose of attracting young professionals to the complex.  It also enacted a new policy encouraging open and direct communications with residents.  As a result, the scope of plaintiff's position increased dramatically.  For example, the number of

resident notices increased from an average of 3 per month to approximately 100 per month.

16. Also at this time, Insignia hires a firm to upgrade the PCV/ST website and a public relations firm to create a new PCV/ST image. Plaintiff assisted other management personnel on the website project.

17. For the next year or so, plaintiff worked diligently in her position and received nothing but positive feedback from Stadmeyer and others regarding her work performance. She also received a 7 % increase in salary in January 2002, a $7,500 bonus in March 2002 and a 5.7% salary increase in January 2003.

18. In or about September 2002, Stadmeyer announced that he was reorganizing the Management Office and that the Resident Services Group, which at that time had reported to plaintiff, would now be reporting to the Director of Operations, Peter Burke. Despite the reorganization, plaintiff continued to perform resident services functions, as well as her community affairs functions.

19. In or about November 2002, as the scope of plaintiff's work continued to increase, Stadmeyer decided to hire an administrative assistant to plaintiff.

20. In the beginning of 2003, the volume of work continued to increase for plaintiff as a result of two major events. First, in February 2003, after a major gas explosion at PCV/ST, plaintiff's community affairs department coordinated the relocation of the families affected by the explosion. Second, in April 2003, a major new construction project began at PCV/ST and it was determined that all information related to the project was to flow through the community affairs department.

21. On May 7, 2003, plaintiff was called into Stadmeyer's office. After commenting to her how well everything in the communications area was going, he then told plaintiff that he was moving her assistant (a 24 year old woman) to the resident services area to assist the supervisor there; that he had hired someone with website experience; and that, as a result, she was no longer needed. When plaintiff pointed out to Stadmeyer that she had a strong communications background, he agreed but stated that he had already hired someone else. Stadmeyer then told plaintiff that he assumed that since she was "independently wealthy" she would probably not want to work full-time. Plaintiff responded by telling him that not only was she not independently wealthy, but that her personal financial status was not relevant. In response, Stadmeyer continued to praise her work and told her, among other things, that he would be happy to give her a good reference. Plaintiff's last day of employment was May 19, 2003.

22. Upon information and belief, plaintiff was replaced in her position by a woman in her late twenties.

**Stadmeyer's Sexual and Age-Related Comments**

23. After the departure of Santos in October 2001, plaintiff's office was moved upstairs close to Stadmeyer's office and she began working with him on a daily basis. Prior to this, plaintiff had worked with Stadmeyer only indirectly.

24. After plaintiff began working in close proximity to and under the supervision of Stadmeyer, the office environment for her became increasingly uncomfortable and discriminatory. Stadmeyer made routine references and comments regarding plaintiff's age, as well as the ages of others. For example, Stadmeyer would say to plaintiff, "Gee Pat, in your time is that what they did?" or "Gee, do you ever get

6

tired of working… do you think of retiring?" He also commented to her about how well she worked with and related to the seniors in the complex. With regard to one particular elderly resident who happened to be in the office, Stadmeyer commented that he and plaintiff "spoke the same language" and she could "understand him."

25. Stadmeyer also made comments of a sexual nature in plaintiff's presence and cultivated a boy's club atmosphere at the office. He would often use words and phrases that had a double meaning (of a sexual nature) and pressured the women to go out to the bars after work hours and join his "group." He also made constant comments about the way women in the office, including plaintiff, were dressed. On one occasion, after the gas explosion at PCV/ST, some sexual toys and paraphernalia was found at one of the apartments. Stadmeyer commented to plaintiff in a staff meeting, "Pat, did you go check out the items – did you find anything interesting."

26. Plaintiff complained on numerous occasions to Stadmeyer about his inappropriate comments, yet his conduct did not change. In fact, Stadmeyer would often respond by telling plaintiff that he wanted to "make [her] blush."

## **FIRST COUNT**

27. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

28. Upon information and belief, MetLife maintained ultimate control over the policies and personnel decisions of Insignia with respect to the management of PCV/ST.

29. Upon information and belief, defendants, through the actions of their agent, Stadmeyer, terminated plaintiff's employment on account of her age and because

she did not fit into the younger, fresher image that defendants were striving to achieve for PCV/ST.

30. Defendants' actions were willful and without regard to the rights of plaintiff.

31. Defendants' actions had a substantial and detrimental effect on plaintiff's employment and emotional and physical well-being.

32. As a direct result of such unlawful actions, plaintiff has suffered, and continues to suffer, depression, anxiety, nervousness and emotional and physical distress.

33. Defendants' actions as described herein constitute age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

34. As a direct and proximate result of defendant's unlawful acts, plaintiff has (i) lost wages and benefits, (ii) suffered, and continues to suffer, physical and mental pain and anguish, (iii) suffered, and continues to suffer, humiliation and embarrassment, and (iv) felt otherwise mentally and physically degraded.

## SECOND COUNT

35. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

36. Defendant's actions described herein constitute age discrimination and harassment in violation of the New York State Human Rights Law, New York Executive Law §290 et seq.

## THIRD COUNT

37. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

38. Defendant's actions described herein constitute sex discrimination and harassment in violation of the New York City Human Rights Law, as amended, New York City Administrative Code §8-101 et seq.

## FOURTH COUNT

39. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Amended Complaint as though fully set forth herein.

40. From approximately October 2001 until the termination of her employment, plaintiff was subjected to a work environment at Insignia that was hostile and discriminatory toward women.

41. Defendants' actions described herein constitute sex discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

## FIFTH COUNT

42. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Amended Complaint as though fully set forth herein.

43. Defendants' actions described herein constitute sex discrimination and harassment in violation of the New York State Human Rights Law, New York Executive Law §290 et seq.

## SIXTH COUNT

44. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Amended Complaint as though fully set forth herein.

45. Defendants' actions described herein constitute sex discrimination and harassment in violation of the New York City Human Rights Law, as amended, New York City Administrative Code § 8-101 et seq.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff respectfully prays that this Court enter judgment in her favor and against defendant as to all Counts of the Amended Complaint, and award her the following:

A. Damages for all discriminatory acts, including, but not limited to, back pay, fringe benefits, and loss of employment opportunities for future pay and advancement equal to the amount plaintiff would have earned but for the discriminatory acts of defendants.

B. Front pay equal to the amount plaintiff would have earned but for the discriminatory acts of defendants.

C. Compensatory damages for emotional and physical pain and suffering.

D. Punitive Damages.

E. Liquidated Damages.

F. Prejudgment interest for all amounts awarded for lost wages or other damages.

G. Attorneys fees, costs and disbursements.

H. Such other further and additional relief as this Court deems just and proper.

## JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues herein so triable.

**REPPERT KELLY & SATRIALE, LLC**
Attorney for Plaintiff


By: S/ Christopher P. Kelly
  Christopher P. Kelly  (CK 0195)


Dated:  March 25, 2004

11